**UNITED STATES of America, Appellee,**

v.

**Graham Bobbitt BALL, Appellant.**

**No. 10167.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 1, 1965.

Decided March 25, 1966.

Certiorari Denied June 6, 1966.

See 86 S.Ct. 1863.

Irvin B. Tucker, Jr., Raleigh, N. C. (Hill Yarborough, Louisburg, N. C., on brief), for appellant.

Gerald L. Bass, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and MICHIE, District Judge.

BOREMAN, Circuit Judge.

Appellant Ball contends that the District Court erred in revoking probation granted him subsequent to his conviction and sentence for violation of the Internal Revenue (Liquor) Laws.

A hearing on a motion of the probation officer for revocation of Ball's probation was first held by the District Court on August 12, 1964.[1] At that time, the probation officer charged Ball with having breached three conditions of his

---

1. The date of Ball's conviction and sentence was June 8, 1962, and his probationary period was to extend five years from that date.

probation by (1) violating state penal laws, (2) failing to live a clean and temperate life, and (3) failing to keep good company.

The probation officer reported that it was common knowledge in the community that Ball had been drinking and driving while under the influence of alcohol during a period extending from June 5, 1964, to June 8, 1964. He based this conclusion upon disclosures made to him by approximately a dozen persons whom he considered to be reliable sources of information. The officer stated that about one year earlier he had warned Ball about drinking after receiving similar reports.

The probation officer stated that an altercation occurred at a store operated by Ball on June 7, 1964, between two persons named Nash and Overton and that Ball separated them. He further reported that later on that same day Ball traveled to Louisburg, North Carolina, in company with Nash and two other persons, Lancaster and Bailey. Lancaster got into a fight there with a service station proprietor. Once again Ball separated the two combatants. Bailey was arrested for drunkenness. Ball, however, was not arrested. The probation officer stated that Nash, Lancaster and Bailey were persons of bad character and reputation, with extensive criminal records.

The probation officer added that on June 8, 1964, Ball was found slumped over the steering wheel of his car, the motor running, on a paved road approximately two miles from his home. The time of this occurrence was about 10 or 10:30 a. m.[2] The person who discovered Ball concluded that he was in no condition to operate an automobile and drove him home.

It is not disputed by Ball that the two altercations occurred and that he was found slumped over the steering wheel of his car. However, he asserted at the first hearing that he had not voluntarily kept bad company. He claimed rather that Lancaster came to his home prior to the Louisburg trip and told him that he wanted to go to Ball's store, which was closed, to make a purchase. Ball contended that he got into Lancaster's car thinking that he was merely going to serve a customer, but that once he was in the car, Lancaster refused to stop until they got to Louisburg.

Ball flatly denied drinking any alcoholic beverages during the period in question. In addition to producing a number of character witnesses who were willing to testify that his reputation since his liquor conviction had been that of a law-abiding citizen, Ball offered an affidavit of a Louisburg police officer, who investigated the service station fight, to the effect that Ball had not appeared intoxicated. However, Ball's principal line of defense to the drinking charge was that during the period from June 6 to June 8, 1964, he was suffering from a bad tooth and was under heavy sedation, which may have caused him to appear as though he had been drinking. Ball stated that a dentist had extracted the aching tooth for him on the evening of June 6, 1964, and had given him prescriptions for drugs which he took during the period in question. He further stated that he had gone to the hospital on June 8, 1964, and that what appeared to be a piece of bone (which he claimed had been broken off during the extraction) was removed from his jaw. According to Ball he did not see his dentist on June 8, 1964.

Ball also claimed that, except as to the service station fight, he had no notice of the charges which the probation officer pressed against him and he was thus taken by surprise.

Although the court later revealed [3] that it was of the opinion that there was ample evidence adduced at the first hearing to justify revocation of Ball's proba-

2. The stated time of the incident was fixed by Ball himself at the second hearing, which is further discussed *infra*.

3. The court's disclosure of this view occurred at the second hearing.

tion, it decided to give him the "benefit of every doubt" and did not then revoke his probation. The court, however, did direct the probation officer to inquire of Ball's dentist as to the nature of the drugs prescribed and his opinion as to what effect they might have had upon Ball.

The probation officer reported to the court, at a hearing held on June 3, 1964, the results of his further investigation. The records of Dr. Eakes, the dentist who had treated Ball, revealed that Ball's tooth was extracted on Monday, June 8, 1964, rather than on June 6, 1964, as Ball had contended at the first hearing. Dr. Eakes was present at the second hearing and testified that the extraction was performed after 9 o'clock in the evening. The probation officer further reported that a check of hospital records revealed no visit by Ball for any purpose during the period in question.

Ball admitted at the second hearing that he had not gone to the hospital. He stated instead that his wife had removed what appeared to be a piece of bone from his jaw with a pair of tweezers in their home. His only explanation for this misstatement at the first hearing was, "I just got my days and things mixed up." He admitted also that he had mistakenly represented at the first hearing that the extraction of his tooth had occurred on June 6, 1964, explaining that his mistake was attributable to his lack of opportunity to check on the date.

Ball nevertheless insisted that he had been under heavy sedation for relief from his toothache throughout the period of his alleged spree. He testified that he visited Dr. Eakes at his home in the early morning hours of June 6, 1964; that he was given a prescription and that he took the prescribed capsules, along with Anacin, BC and aspirin tablets, from June 6 to the time of the extraction on the evening of June 8. Dr. Eakes verified that Ball had visited him early on the morning of June 6. However, he could not remember whether he prescribed medicine for Ball, or what type it might have been. From uncontradicted affidavits of two drugstore employees introduced by Ball, it appears that Ball purchased, on June 6, 1964, some APC capsules pursuant to a memorandum written on a prescription form by Dr. Eakes. According to Dr. Eakes, an APC capsule is a little stronger than Anacin and may be purchased without a prescription although he wrote Ball a memorandum for it on a prescription blank. Dr. Eakes stated that APC capsules, taken as directed, could not cause an average individual to appear intoxicated.

In its order of June 11, 1965, the District Court revoked Ball's probation on the following grounds:

"1—He has failed to follow the Probation Officer's instructions and advice.

"2—He has violated a State Law.

"3—He has failed to keep good company.

"4—He misrepresented the facts as presented to the Court during a violator's hearing on August 12, 1964."

██ Since revocation of probation lies within the sound discretion of the sentencing court, United States v. Taylor, 321 F.2d 339 (4 Cir. 1963), the only question before us is whether the District Court abused its discretion.

██ The probation officer reported information from sources which he considered reliable to the effect that Ball had been drinking and driving while under the influence of intoxicants. However, the court did not act upon this report to revoke Ball's probation. Persuasive evidence of Ball's drinking and driving while under the influence of intoxicants is supplied by the uncontradicted fact that he was found in mid-morning on a paved road, slumped over the steering wheel of his car with the motor running. At the first hearing the District Court accepted, subject to further investigation by the probation officer, Ball's explanation that his condition was caused by sedative drugs prescribed for him following the extraction of an aching tooth. However, at the second hearing evidence

was adduced from which the District Court could reasonably conclude that Ball's condition when he was found slumped in his car was not attributable to drugs. Ball's own evidence reveals that he was taking nothing but APC capsules *at the direction of Dr. Eakes* during the relevant period. It was Dr. Eakes' professional opinion that such capsules could not, if taken in the directed dosage, cause a normal person to appear intoxicated. The court was not compelled to accept Ball's unsupported statement, obviously intended to provide a plausible explanation of his condition, that he was taking preparations such as aspirin, Anacin and BC tablets in addition to APC capsules.

The permissible inference of intoxication is bolstered by Ball's factual misrepresentations to the court concerning his tooth troubles. We find no logical reason for his attempt to mislead and deceive the court other than a desire to conceal the true cause of his condition. His distorted version of the sequence of events might well have been calculated to persuade the court that his tooth was pulled on June 6 and that he was thereafter attempting to relieve his pain by taking large quantities of sedatives until the morning of June 8 when a piece of bone was removed from his jaw *at the hospital.* In this context we find no merit in Ball's argument that his misrepresentations were not material.

There is authority for the proposition that evidence which will justify revocation of probation need not be sufficient to support a criminal conviction. See Yates v. United States, 308 F.2d 737 (10 Cir. 1962); Manning v. United States, 161 F.2d 827 (5 Cir. 1947).

"All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." Yates v. United States, supra, 308 F.2d at 739.

One of the reasons assigned by the court for revoking probation was that Ball had failed to keep "good company." While Nash, a person of recognized bad character, was involved in an altercation in Ball's presence on June 7, 1964, it would not necessarily follow that Ball was keeping bad company since Nash was in Ball's store, a place of business open to the public. More persuasive, however, are the facts that later on the same day Ball went to Louisburg with Nash, Bailey and Lancaster, and that all three of Ball's companions were of bad character and repute. The court was not bound to accept the assertion that Ball was virtually a captive and an unwilling associate of that unruly trio.

We are not persuaded that the court abused its discretion in revoking Ball's probation.

Affirmed.