UNITED STATES of America
v.
Isaac Kirkland LEEVY.
No. AC-1049.

United States District Court
D. South Carolina,
Columbia Division.

July 12, 1966.

Terrell L. Glenn, U. S. Atty., and Charles S. Porter, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Frank L. Taylor and Eugene F. Rogers, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

On the petition of the Probation Office probationer Isaac Kirkland Leevy was brought into court on July 5, 1966 for judicial determination of whether he had violated the conditions of probation and whether probation should be revoked.

Probationer, also known as Kirk Leevy, had been placed under probation supervision after entering a plea of guilty to possession and transportation of unstamped distilled spirits in violation of 26 U.S.C. section 5604(a) (1). He was sentenced for this offense on November 27, 1964 to serve eighteen months. This was suspended and a period of four years probation was imposed.

During the interim between the imposition of probation and the considerations presently before the court there transpired several chapters in the biography of Kirk Leevy which so pertain that they cannot be omitted from review. He was arrested on February 4, 1965 in Columbia for gaming. Mr. Leevy admits freely that he relishes a chance and is a devotee of card games. However, this penchant ran him afoul of local law and on February 5, 1965 he paid a twenty-five dollar and fifty cents fine in the Columbia City Recorder's Court. The

attractions of the game overcame his conscience again on February 23, 1965 and he was again arrested and fined. Mr. Leevy was reminded that these arrests violated the conditions of his parole.

In the spring of 1965 on April 9, Kirk stroked his name once more to a plea of guilty—this time to eight counts of petty larceny. This offense was committed in Lancaster, South Carolina. Six women in the company of Kirk Leevy were similarly charged. He was sentenced to eight months or seven hundred dollars in the State Court.

These violations, which are not now before the court, were heard June 17, 1965 and it was ordered that probation be revoked. The revocation sentence of eighteen months which was imposed had a proviso of grace that upon the service of six months or the payment of three thousand dollars fine the remainder of the sentence would be suspended and that he would be released on probation once more for twelve months. A reduction of the fine to two thousand dollars was subsequently ordered.

The events which happened after that appearance are those with which the court's attention is now drawn. The Probation Officer charged the following violations in the Petition (note that some of the six women from a previous chapter, appear now in more prominent roles):

On September 22, 1965, Isaac Kirkland Leevy was associating with Betty Geiger (Starks) and Delores Thomas, known shoplifters who were previously involved with Leevy in a shoplifting offense (petty larceny) in Lancaster, S. C. A police investigation disclosed that Leevy conspired with Betty Geiger (Starks), Delores Thomas, and Julia Miles to commit a shoplifting offense in White's Department Store on this date.

On January 6, 1966, Columbia Police Detective T. M. Sharpe recovered stolen goods from a hearse owned by the Leevy Funeral Home. Detective Sharpe had received information that Leevy and Betty Geiger had placed these goods in the hearse.

Testimony as to these violations were given a full hearing. The testimony relative to the first charge (association) revealed that Delores Thomas, Julia Miles, and Betty Geiger were walking and talking throughout the floors of White's Department Store. During the course of their stay Delores and Julia were discovered in the process of shoplifting. These two girls fled when discovered. Julia Miles was apprehended a short time later in a neighborhood near the shopping area by Chief of Police Dodenhoff of the local township of Forest Acres. She appeared excited and afraid, and while under the sway of the emotional impact of the turn of events she gave a statement to the police which identified and implicated the other girls and Kirk Leevy. She also stated that there were specific instructions from Kirk Leevy to make this foray and to shoplift certain specified items. One example of this is the instruction she repeated as being to get a size 42 regular man's suit. Apparently there was a ready market available before the merchandise was "procured" because she stated it was not Kirk's size, but that he was going to sell it. After giving this statement Julia invoked the Fifth Amendment, refused to further testify, and continues to refuse. Her refusal to do so is based on the advice of her counsel—sage advice perhaps for she is now charged with shoplifting. Shortly after the occurrence Kirk Leevy was picked up in a car *in the company of Betty Geiger* near the entrance to shopping center.

Although some portions of this recital of events is in dispute the court, sitting without a jury, must resolve conflicts in the evidence and give credence to the witnesses. The court must be ever mindful of the dangers of allowing hearsay to play "too great a role in the inquiry" and be "alert to the frequent untrustworthiness of such proof." United States v. Register, 360 F.2d 689 (4th Cir. April 15, 1966). The

evidence has been considered with regard for the caveat. In this instance the appraisal of the evidence and the circumstances surrounding the occurrence tend strongly to prove the violation of probation as charged

Delores Thomas was caught with stolen merchandise in her hands. Kirk Leevy was present when she was questioned. At this time she did not disclaim his complicity in the affair. Now she denies that Leevy commissioned the shoplifting.

Relative to the second charge of the petition Columbia Detective T. M. Sharpe received a phone call informing him that Kirk and Betty Geiger had been seen putting merchandise into a hearse which was parked across the street from a funeral home which is owned by Kirk Leevy's father and which is where Kirk is employed. The informer, with whom Detective Sharpe is on a rather familiar basis, denied ever having called him. The point here, however, is that Detective Sharpe and a state agent, who gave corroborating testimony, found the described merchandise in the hearse just as the informer had described. The hearse was not owned by Mr. Leevy, it has been submitted, but without question the hearse was in possession of the funeral home for use in its business. Kirk Leevy disclaims any knowledge of the stolen goods, as could be expected.

■ In the appeal from a revocation of probation in United States v. Ball, 358 F.2d 367 (4th Cir. 1966), the Fourth Circuit said:

There is authority for the proposition that evidence which will justify revocation of probation need not be sufficient to support a criminal conviction.

See Yates v. United States, 308 F.2d 737 (10 Cir. 1962); Manning v. United States, 161 F.2d 827 (5 Cir. 1947). 'All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.' Yates v. United States, supra, 308 F.2d at 739.

The uncontradicted direct evidence that Kirk Leevy was in association with Betty Geiger whose past criminal history has involved Leevy before demonstrates an attitude toward probation that is rather more cavalier than the gravity of the obligation tolerates. In view of all the evidence and the surrounding circumstances this court is convinced and satisfied that the conditions of probation have been violated as charged and that the probationer is not a fit subject for further probation. Revocation lies within the sound discretion of the sentencing court, United States v. Taylor, 321 F.2d 339 (4th Cir. 1963); see United States v. Ball, 358 F.2d 367 (4th Cir. 1966), therefore, for the reasons stated the probation and suspension of sentence of Isaac Kirkland Leevy is hereby revoked.[1] The probationer is ordered to be committed to the custody of the Attorney General for the remaining twelve months of the sentence.

■ Lest there be confusion as to the procedure for filing timely notice of appeal from this order—should appeal be sought—this proceeding shall be classified for the purpose of perfecting an appeal as a CRIMINAL PROCEDURE.[2] Should either party have reason to contend the matter is civil in nature and controlled by civil procedure [3] the court

1. 18 U.S.C.A. § 3653 (1951) provides in part: "As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

2. Fed.R.Crim.Proc. 37(a) (2) provides 10 days after entry of judgment or order in which to file notice of appeal.

3. Fed.R.Civ.Proc. 73(a) provides 30 days for filing notice of appeal, except that in any action in which the United States, or an officer or agency thereof, is a party the notice may be filed within 60 days.

will hear the contention upon motion properly presented.

The United States Marshal shall forthwith make personal service of this order on the probationer Kirkland Leevy.

And it is so ordered.